1  **LAW OFFICES OF**
   **JESSE L. B. HILL**
2  1042 Palm Street, 2nd Floor
   San Luis Obispo, CA 93401
3  Telephone 805/544-5541
   Fax 805/544-5533
4  JLBHill@aol.com

5  Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN YAMAUCHI, ) | Case No. |
| Plaintiff, ) ) | **COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF** |
| vs. ) ) | |
| JOHN COTTERMAN, an individual and ) as Trustee of the Echelon Mortgage ) Corporation 401(k) Profit Sharing Plan; ) GRAND BANK, a corporation; ) CITIGROUP, INC., a corporation, BANK ) OF AMERICA, INC., a corporation, and ) DOES 1 - 10, inclusive, ) ) | **29 U.S.C. §1132** |
| Defendants. ) _____ ) | |

## **INTRODUCTION**

Plaintiff, Jonathan Yamauchi, alleges in his complaint against defendants as follows:

1.  Plaintiff was the former CEO and a 50% stock owner of Echelon Mortgage Corporation ("Echelon"), a now defunct California corporation. James Yui Lee ("Lee") was the former CFO and remaining 50% stockholder of Echelon.

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF

Plaintiff and Lee were the two remaining participants and beneficiaries of the Echelon Mortgage, Inc. 401(k) Profit Sharing Plan ("Plan"). Lee, has signed off his remaining interest in the Plan to Plaintiff (Exhibit 1).

2. John Cotterman ("Cotterman") was appointed as the Trustee of the Plan by Judge Maxine Chesney, in 1998. The appointment from the Northern District of California District Court's Judge as Trustee was by Court Order according to page 1 of the letter signed by Cotterman (Exhibit 2). All other participants and beneficiaries, other than Jonathan Yamaguchi and James Lee, in the Plan were paid in full according to Exhibit 2 Page 2 #1.

3. On February 18, 1998, Jonathan Yamauchi and James Lee on behalf of Echelon assigned to the Plan (Exhibit 3) Echelon's 16% interest in a pool of residential first mortgages evidenced in Exhibit 4 #A of the Partial Purchase Agreement between Echelon and Fleet Finance, a subsidiary of Fleet Bank. Sixteen percent of the loan payments received from the loan portfolio were to be remitted to the Plan #50894 c/o Massachusetts Mutual Life Insurance Company (Exhibit 3).

4. According to the Law Department - Investigations & Dispute Resolution of MassMutual Financial Group (Exhibit 5), Cotterman requested a surrender of the account on June 15, 1998 and closed the account at MassMutual. All participants were paid off except Plaintiff and Lee. As loan payments were being collected 16% of each payment on the ten loans should have been remitted to MassMutual for the benefit of the remaining participants and beneficiaries of the Plan. No payments were ever remitted to MassMutual after Cotterman closed the account at MassMutual. Cotterman, as the sole trustee of the Plan had a duty to collect the funds and make sure the Plan continued as to the remaining participants.

5. Fleet Finance, Inc. ("Fleet") owned an 84% participation in the pool of loans and Fleet was the servicer of the loans. Sixteen percent (16%) of each

1  mortgage was to be paid to the Plan according to Exhibit 3.  Upon information and
2  belief some of the loans were sold to Associates Private Mortgages West which was
3  purchased by CitiGoup.  Upon information and belief, some of the loans were
4  purchased by Bank of America when it acquired Fleet Bank.  Upon information and
5  belief, the Paysinger loan was sold by Associates Private Mortgage West to Grand
6  Bank.  Each of the banks knew that sixteen percent (16%) of the mortgage payments
7  and/or payoffs received should have be paid to Massachusetts Mutual or another
8  account of the Plan as directed by Cotterman, the Trustee.  Each of the Banks failed
9  to make the payments, instead keeping the pension funds on their books or selling
10  the loans and keeping the money.  Cotterman, the Trustee, failed to direct the Bank
11  where to pay the funds collected from the loans.

12      6.     This Court has exclusive jurisdiction under 29 U.S.C. §1132(e)(1) to
13  hear ERISA causes of action.

14      7.     This Court had jurisdiction over the Plan before and appointed the
15  Trustee of the Plan.  The Plan was to be administered and the breach took place in
16  this judicial district.  As such, this court has venue and jurisdiction according to 29
17  U.S.C. 1132(e)(2).

18      8.     The true names and capacities, whether individual, corporate, associate,
19  or otherwise of Does 1 through 10, inclusive, are unknown to plaintiff.  Plaintiff
20  therefore sues such defendants by fictitious names and will amend this complaint to
21  insert their true names and capacities once the same have been ascertained.  Plaintiff
22  is informed and believes and thereon alleges that some of the fictitiously-named
23  defendants Does 1-10 are in some manner, means or degree connected with the
24  defendants and the matters herein alleged and, thus, are liable to plaintiff thereon.
25  Plaintiff is informed and believes and thereon alleges that some of the fictitiously-
26  named defendants Does 1-10 are, in some manner, means or degree connected with

the failure to pay pension benefits to the Plan and ultimately to Plaintiff.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Breach of Fiduciary Duty**
**(Against John Cotterman and DOES 1 -10)**

9. Plaintiffs incorporate by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

10. Cotterman was appointed as a Trustee of the Plan. As the Trustee of the Plan, Cotterman was the named fiduciary according to 29 U.S.C. §1102(a). Cotterman had a fiduciary duty to collect the funds of the Plan for the exclusive benefit of participants of the Plan.

11. Cotterman had the duties under 29 U.S.C. §1104 to discharge his duties with respect to the Plan solely in the interests of the participants and beneficiaries of the plan for the exclusive purpose of providing benefits to participants and beneficiaries and acting like a prudent man familiar with such matters would act under the circumstances.

12. Cotterman breached his fiduciaries duties by failing to collect or follow the collection of the funds for the remaining participants in the Plan. By terminating the account at MassMutual, Cotterman did not discharge his duties with respect to the Plan in the best interest of the plan participants. Cotterman is personally liable to the Plan for his breach of fiduciary duty according to 29 U.S.C. §1109.

13. Plaintiff has been damaged by Cotterman not collecting the funds to be paid to him as the sole remaining participant and beneficiary of the Plan.

14. Cotterman as a fiduciary to the Plan must be bonded under 29 U.S.C. §1112 for at least 10% of the amount of the funds handled for the Plan. The total value of the fund handled on behalf of the Plan was $1,046,157.49. The bond

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF

4

should have some significant value.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### SECOND CLAIM FOR RELIEF
### Declaratory Judgment
### (Against Defendants John Cotterman, Grand Bank, Inc., CitiGroup, Inc. And Bank of America, Inc. and DOES 1 -10)

15. Plaintiffs incorporate by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

16. Each of the Bank defendants named herein was aware that they owned 84% of the pool of loans and that 16% of the loan payments should have been paid to the Plan. As an example, Grand Bank acquired one loan from Associates Private Mortgage West called the Paysinger loan. Grand Bank in Exhibit 6 admit that they collected the funds from the Paysinger loan. Grand Bank further admits that they did not remit any payments to Mass Mutual as required by the instructions Grand Bank has in their file. Grand Bank has indicated that they would turn the funds over to the Plan. Since the Plan has been terminated, the funds should be turned over to the sole remaining participant and beneficiary of the Plan, the Plaintiff.

17. Upon information and belief, Bank of America, Inc. and CitiGroup, Inc. purchased entities which held some of the loans and/or payoff proceeds of the loans of which a portion was to be paid to the Plan. The banks need to be directed to pay those funds to the Plan or to Plaintiff.

18. Cotterman needs to collect the funds from the various banks who have held the funds which should have been paid to the Plan. Cotterman needs to collect and hold the funds on behalf of the Plan and pay those funds to Plaintiff who has reached retirement age.

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF

5

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF
#### Injunction
**(Against Defendants John Cotterman, Grand Bank, Inc., CitiGroup, Inc. and Bank of America, Inc. and DOES 1- 10)**

19. Plaintiffs incorporate by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

20. The payments on the loans and the funds collected by each of the various banks and upon information and belief, the Plan assets held by the bank and each of them, should be paid into the Plan or to Plaintiff. Plaintiff is likely to prevail on their claims and will suffer irreparable injury if the Banks, and each of them, is permitted to commingle, transfer, pledge, encumber, grant a security interest in, or in any other manner use, dispose of, or hypothecate any of Plaintiffs' Plan benefits or any of the proceeds thereof.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in favor of Plaintiff as follows:

1. For a determination that John Cotterman is a fiduciary of the Plan and personally liable to the Plan and Plaintiff for all of the funds which should have been collected by the Plan and remitted to the Plan and Plaintiff from those notes at the interest rates listed on the notes;

2. Declaring that Plaintiff's Plan benefits and all proceeds thereof are not property of the Banks and that the funds from the mortgages should be paid to the Plan or

Plaintiff and that Defendant Cotterman is liable for all of the Plan losses to the Plan and Plaintiff at 10% interest, the interest rate of the notes owed to the Plan;

3. Declaring that Plaintiff is entitled to the immediate payment of his benefits under the terms of the Plan;

4. Enjoining Defendants, and each of them, from commingling, transferring, pledging, encumbering, granting a security interest in, or in any other manner using, disposing of, or hypothecating any of Plaintiff's Plan benefits or any of the proceeds thereof;

5. Ordering Defendant, John Cotterman, to pay Plaintiff his respective Plan benefits and pre-judgment interest thereon at 10% from February 18, 1998 through the date of judgment by this Court;

6. Imposing a constructive trust over Plaintiff's Plan benefits and all proceeds thereof, in Defendants' possession, custody, or control;

7. Awarding Plaintiffs their attorneys' fees and costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g); and

8. Awarding Plaintiffs such other and further relief as the Court may deem just, proper, and equitable.

DATED: March 25, 2014           Respectfully submitted,

**LAW OFFICES OF JESSE L. B. HILL**

By: /s/ Jesse L.B. Hill
Jesse L.B. Hill, Esq.
Attorney for Plaintiff
JONATHAN YAMAUCHI

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF