United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONATHAN YAMAUCHI,

        Plaintiff,

   v.

JOHN COTTERMAN, *et al.*,

        Defendants.

_____/

No. C-14-1378 EMC

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS**

**(Docket Nos. 64, 65, 70)**

Pending before the Court are Defendants Bank of America, N.A.,[1] Citigroup, Inc., and John Cotterman's motions to dismiss Jonathan Yamauchi's amended complaint (Docket No. 61 ("Amended Complaint")). Plaintiff Jonathan Yamauchi ("Yamauchi") has alleged claims for breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud, and declaratory relief against all Defendants.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In March of 2014, Yamauchi sued Defendants John Cotterman ("Cotterman"), Citigroup, Inc. ("Citigroup"), and Bank of America, N.A. ("BANA").[2] Yamauchi sued Cotterman in his individual capacity and as trustee for the Echelon Mortgage Corporation's 401(k) Profit Sharing Plan. Yamauchi sued Citigroup and BANA (collectively the "Banks" or "Bank Defendants") as

---

[1] It appears that Yamauchi erroneously named "Bank of America, Inc." as a defendant, which does not appear to exist.

[2] Yamauchi also sued Grand Bank, which was dismissed on March 13, 2015. Docket No. 99.

United States District Court

For the Northern District of California

successors in interest or assignees to certain residential loans or to payments/liabilities associated with those loans.

The Court previously granted Defendant Cotterman and Citigroup's motions to dismiss, because Yamauchi's claims were time-barred, and he did not plead any exception to the statute of limitations.  Docket No. 60.  The Court granted leave to amend.  *Id.*

When the Court dismissed the original complaint, the Court specifically cautioned Yamauchi that if he intended to plead fraud or concealment as an exception to the running of the ERISA statute of limitations, then Yamauchi would need to plead active concealment.  The Court also advised Yamauchi that he must meet the heightened pleading standard of Rule 9 with respect to any allegations sounding in fraud.  *Id.*  The Court further advised Yamauchi that he would need to identify and plead a clear factual and legal basis as to the liability of the Bank Defendants.  *Id.*

The Amended Complaint alleges that Yamauchi was the CEO of the now-defunct Echelon Mortgage Corporation ("Echelon") and was a beneficiary of Echelon's 401(k) Profit Sharing Plan ("Plan").  Amended Complaint ¶ 1.  Yamauchi alleges that Defendant Cotterman was appointed as the trustee of the Plan by Judge Wilken in 1997 during his criminal prosecution.  *Id.* ¶ 2 & Ex. 2.

At issue in the Amended Complaint is the disposition of Plan assets upon the termination of the Plan in 1998, approximately 16 years before Yamauchi brought suit.  In June of 1991, Echelon entered into a Partial Purchase Agreement with Fleet Finance, assigning to Fleet Finance 10 residential mortgage notes, selling Fleet the right to 84% of the monthly payments on those notes, and retaining a subordinated interest in the remaining 16% of the monthly payments.  Amended Complaint, Ex. 4.  Yamauchi alleges that on February 18, 1998, he and Echelon's CFO at the time assigned Echelon's 16% interest to the Plan.  *Id.* at ¶ 3 & Ex. 3.  Under the terms of the purchase agreement, Fleet Finance was the servicer of the loans.  *Id.,* Ex. 4.

Around the same time, Cotterman sent a letter to an attorney named Albert J. Boro (Yamauchi's attorney) in Cotterman's capacity as Plan trustee.  Amended Complaint, Ex. 2.  In this letter, Cotterman identifies two types of assets owned by the Plan:  (1) short term liquid assets (available for immediate distribution), and (2) long-term illiquid assets in the form of the mortgage participation interest retained through the Partial Purchase Agreement with Fleet Finance.  Amended

**United States District Court**
For the Northern District of California

Complaint, Ex. 2.  In the letter, Cotterman states that "[d]epending on the district court criminal proceedings, the remainder of Jonathan Yamauchi's and James Lee's account balances could be paid upon receipt of payments received from the long term assets."  "Additional amounts received from the long term assets could then be allocated to all Plan Participants based on current account balances and thereafter distributed."  *Id.*

The Amended Complaint alleges that Cotterman told Yamauchi that Cotterman planned to exercise his authority as the Plan Trustee and Plan Administrator to terminate the Plan and turn the remaining "illiquid" assets over to the Plaintiff.  *Id.* at ¶¶ 18-19.  Plaintiff alleges that Cotterman then closed the Plan's MassMutual account on June 15, 1998.  *Id.* at ¶ 4.  Plaintiff alleges that "[s]ince Cotterman did not turn the mortgages over to Plaintiff, [Yamauchi] assumed that Cotterman was keeping the Plan going."  *Id.* at ¶ 18.  Plaintiff alleges that Cotterman "had a duty to collect funds and make sure the Plan continued," but that, notwithstanding that duty, "[n]o payments were ever remitted to MassMutual after Cotterman closed the account."  *Id.* at ¶ 4.[3]

Yamauchi does not allege in his Amended Complaint when and how he learned of the alleged fiduciary breaches and misrepresentations.  Instead, in opposition to the motions to dismiss, Yamauchi's counsel reaches beyond the four corners of the Amended Complaint to refer back to a declaration that Yamauchi filed in connection with the previous motions to dismiss.[4]  In that declaration, Yamauchi attests that one of the mortgagors (the Paysinger borrower) contacted

---

[3] As discussed herein, the Court will consider arguments and allegations raised in opposition only for the purpose of determining whether to grant leave to amend.  *Broam v. Bogan,* 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).  The facts from Yamauchi's previous declaration are not alleged in Yamauchi's Amended Complaint, and Yamauchi's current position regarding when and how he discovered his claims does not align with that declaration.  Yamauchi now argues in opposition that he waited until July 25, 2011 after Cotterman told him in July of 1998 that the only mortgage that had been located was expected to begin monthly payments in thirteen years.  *See* Docket No. 78 at 4-5 (citing Docket No. 71-1).  Yamauchi now contends that he correspondingly waited thirteen years and thereafter contacted Cotterman to inquire into the Plan and the status of the mortgage payments.  *Id.*  Yamauchi acknowledges that he had been trustee of the Plan, but was removed as part of his trial and conviction for embezzlement from the Plan.  *Id.* at 9.  In opposition, he argues that, after his criminal trial and sentencing, he was not in a position or inclined to investigate or file an action before 2011.  *Id.*  With respect to the Banks, he claims that his criminal conviction made him a "vulnerable customer[,] because he was convicted of embezzlement and that is going to freeze his actions like a deer in headlights."  Docket No. 76 at 13.

[4] Yamauchi's counsel does not include the correct docket citation; he appears to be citing to the declaration at Docket No. 27, not Docket No. 44.

**United States District Court**

For the Northern District of California

1    Yamauchi in September 2013.  At that time, Yamauchi learned that the Paysinger borrower was

2    making her mortgage payments to Grand Bank.  Yamauchi then contacted MassMutual, which

3    informed him that there was no money in the Plan.  He then contacted Cotterman.  As reflected in an

4    exhibit attached to the Amended Complaint, in or around early January 2014, MassMutual

5    confirmed to Yamauchi in writing that the Plan had been closed pursuant to a June 15, 1998

6    surrender request from Cotterman.  Amended Complaint, Ex. 5.

7          Cotterman, now joined by all the Bank Defendants, again argues that Yamauchi's claims are

8    time-barred on the face of the Amended Complaint.  The Defendants further argue that ERISA

9    preempts Yamauchi's common law claims.  In general, the Bank Defendants argue that Cotterman's

10   claims are not adequately pled under Rule 8, and, where applicable, Rule 9.

11         For the reasons stated on the record, and as supplemented herein, the Court **GRANTS** each

12   of the motions to dismiss with prejudice.

13                                **II.    DISCUSSION**

14   A.    Legal Standard

15         A motion to dismiss for failure to state a claim tests the legal sufficiency of the claims in the

16   complaint.  *See* Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is proper where there is

17   either "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim."

18   *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).  For

19   the purposes of testing the legal sufficiency of the complaint, a court must "accept all material

20   allegations of fact as true and construe the complaint in a light most favorable to the nonmoving

21   party."  *Vasquez v. Los Angeles County,* 487 F.3d 1246, 1249 (9th Cir. 2007).

22         To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim

23   to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A

24   claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the

25   reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556

26   U.S. 662, 677-78 (2009).  "While legal conclusions can provide the framework of a complaint, they

27   must be supported by factual allegations."  *Id.*  A plaintiff must allege "more than unadorned, the-

28   defendant-unlawfully-harmed-me accusation[s]."  *Id.*  "Threadbare recitals of the elements of a

United States District Court

For the Northern District of California

1    cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly,*

2    550 U.S. at 555); *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009) ("conclusory allegations

3    of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."). In sum,

4    "[f]actual allegations must be enough to raise a right to relief above the speculative level on the

5    assumption that all of the complaint's allegations are true." *Id.*

6    B.    <u>ERISA Preemption</u>

7        Cotterman and Citigroup argue that ERISA preempts Yamauchi's state law claims. The

8    Court agrees that the claims against Cotterman are preempted by ERISA. In enacting ERISA,

9    Congress set out to "protect interstate commerce and the interests of participants in employee benefit

10    plans and their beneficiaries, by requiring the disclosure and reporting to participants and

11    beneficiaries of financial and other information with respect thereto, by establishing standards of

12    conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing

13    for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

14    To further ERISA's purpose to "provide a uniform regulatory regime over employee benefit plans . .

15    . ERISA includes expansive pre-emption provisions that are intended to ensure that employee

16    benefit plan regulation would be exclusively a federal concern. " *Aetna Health v. Davila,* 542 U.S.

17    200, 208 (2004) (citations omitted).

18        Consequently, ERISA Section 514(a) preempts "any and all state laws insofar as they may

19    now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has

20    given the phrase "relate to" a "broad common-sense meaning, such that a state law 'relate[s] to' a

21    benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a

22    plan.'" *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47 (1987) *superseded by statute on other*

23    *grounds as stated in Hunter v. Ameritech,* 779 F. Supp. 419, 420 (N.D. Ill.1991) (citing

24    *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739 (1985)). The essential purpose of

25    the preemption clause "was to avoid a multiplicity of regulation in order to permit the nationally

26    uniform administration of employee benefit plans." *New York State Conference of Blue Cross &*

27    *Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 657 (1995). Consequently, "where the

28    existence of an ERISA plan is a critical factor in establishing liability under a state cause of action,

United States District Court
For the Northern District of California

the state law claim is preempted." *Wise v. Verizon Commc'ns, Inc.,* 600 F.3d 1180, 1190 (9th Cir. 2010) (citation omitted).

Specifically, ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement" under ERISA Section 502(a), 29 U.S.C. § 1132(a). *Davila,* 542 U.S. at 208. As a result, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila,* 542 U.S. at 209. State law claims that necessarily depend on the existence of an ERISA plan are preempted even when the state action purports to authorize a remedy unavailable under ERISA. *Wise,* 600 F.3d at 1190.

Here, all claims against Cotterman arise from Yamauchi's allegation that Cotterman breached his fiduciary duties as Trustee and Plan administrator regarding transfer and collection of certain Plan assets. *See* Amended Complaint ¶¶ 2, 4, 11, 18-19, 30, 40, 46. As a result, to pursue remedies for such claims, Yamauchi "must do so under ERISA." *Bast, v. Prudential Ins. Co. of Am.,* 150 F.3d 1003, 1008 (9th Cir. 1998), *as amended* (Aug. 3, 1998) (preempting claims that arise out of defendant's actions as the benefit plan administrator). Plaintiff's state law claims and declaratory judgment claim are therefore preempted as to Cotterman, because each claim against Cotterman "necessarily references an ERISA Plan." *Wise,* 600 F.3d at 1191; *see also Lea v. Republic Airlines, Inc.,* 903 F.2d 624, 631-32 (9th Cir. 1990) (finding preempted claims for negligence, breach of contract, fraud, and equitable relief); *Cox v. Eichler,* 765 F. Supp. 601, 606 (N.D. Cal. 1990) (concluding claims for relief based upon breach of fiduciary duty, fraud, deceit, negligent misrepresentation, negligence, negligent supervision, and breach of contract were preempted as "per se" related to administration of an ERISA plan).

On the other hand, common law claims against the Bank Defendants for breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, and fraud are not preempted by ERISA. Yamauchi's Amended Complaint is not a model of clarity. Nonetheless, it appears that Yamauchi's contentions as to the Bank Defendants arise from their alleged duties as loan servicers or as assignees / successors in interest to certain loans or loan proceeds. While there may be problems with Yamauchi's contentions against the Banks on the merits, Yamauchi's allegations as

to the Banks do not necessarily reference an ERISA plan.  Yamauchi's claims against the Banks would be the same if the loans were not alleged to be assets of the Plan and Yamauchi instead alleged that he was assigned the interest in the mortgage payments by operation of ordinary contract. Moreover, ERISA has a savings clause that provides that "ERISA does not exempt any person from 'any law of any State which regulates insurance, banking, or securities.'"  *Bast,* 150 F.3d at 1008 (citing 29 U.S.C. § 1144(b)(2)(A)).  Allegations arising out of the Banks' fiduciary duties under banking law or common law trust principles would put such duties (and any related misrepresentations or fraud) outside of ERISA.  Thus, ERISA does not preempt state law claims against the Banks, because such claims seek to remedy a violation of a legal duty independent of ERISA.  *Cf. Davila,* 542 U.S. at 214 (preemption proper for claim alleging wrongful denial of benefits promised under ERISA-regulated plans, because the claim "did not attempt to remedy any violation of a legal duty independent of ERISA").

C.     Statute of Limitations

A plaintiff fails to state a claim, and therefore dismissal is appropriate, where his failure to comply with the applicable statute of limitations is evident from the allegations of the complaint. *Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC,* 733 F.3d 1251, 1254 (9th Cir. 2013) (affirming dismissal on statute of limitations grounds); *Estate of Blue,* 120 F.3d 982, 984 (9th Cir. 1997) (same); *Jablon v. Dean Witter,* 614 F. 2d 677, 682 (9th Cir. 1980) (same).

1.     ERISA

In this case, Cotterman contends that any breach of fiduciary duty claim premised on ERISA is time-barred.  Yamauchi alleged that Cotterman

> breached his fiduciaries duties by failing to collect or follow the collection of the funds for [Yamauchi and Lee] and [failing to] make sure the insurance and securities were properly handled after he terminated the Plan. By terminating the account at MassMutual, Cotterman did not discharge his duties with respect to the Plan in the best interest of the plan participants nor did he follow his fiduciary duties as an investment advisor to the Plan or Plaintiff on Plan termination. Cotterman was to turn the remaining loans over to the plaintiff for Plaintiff's collection from The Banks. This was never done and the Banks, and each of them collected the funds and placed the funds on their books.

Amended Complaint ¶ 12.  On the face of the Amended Complaint, the alleged wrongful acts by

Cotterman took place in 1998, approximately 16 years before Yamauchi sued.

Section 413 of ERISA, 29 U.S.C. § 1113, sets forth the statute of limitations for a claim for

breach of fiduciary duty under ERISA.  Specifically, ERISA's statute of limitations provides:

> No action may be commenced under this subchapter with respect to a
> fiduciary's breach of any responsibility, duty, or obligation under this
> part, or with respect to a violation of this part, after the earlier of –
>
> (1) six years after (A) the date of the last action which constituted a
> part of the breach or violation, or (B) in the case of an omission the
> latest date on which the fiduciary could have cured the breach or
> violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual
> knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be
> commenced not later than six years after the date of discovery of such
> breach or violation.

ERISA § 413, 29 U.S.C. § 1113 ("Section 413") (emphasis added).  Thus, except in cases of fraud or

concealment, ERISA imposes a six-year limitations period, which runs from the date of the breach.

The limitations period is shortened to three years in cases where the plaintiff has actual knowledge

of the breach.

The language of Section 413 "suggests a judgment by Congress that when six years has

passed after a breach or violation, and no fraud or concealment occurs, the value of repose will

trump other interests, such as a plaintiff's right to seek a remedy." *Tibble v. Edison Int'l,* 729 F.3d

1110, 1120 (9th Cir. 2013), *cert. granted in part on other grounds,* 135 S. Ct. 43 (2014) (quoting

*Larson v. Northrop Corp.,* 21 F.3d 1164, 1172 (D.C. Cir. 1994)).  In other words, Section 413(1) is

intended to encourage "rapid resolution of disputes, repose for defendants, and avoidance of

litigation involving lost or distorted evidence." *Miller v. Fortis Benefits Ins. Co.,* 475 F.3d 516, 522

(3d Cir. 2007) (quoting *Romero v. Allstate Corp.*, 404 F.3d 212, 233 (3d Cir. 2005)); *see also David

v. Alphin,* 704 F.3d 327, 339 (4th Cir. 2013).

Under Section 413, "[t]he statute of limitations itself indicates a two-step analysis of accrual

of an ERISA action: first, when did the alleged 'breach or violation' occur; and second, when did

[the complainant] have 'actual knowledge' of the breach or violation?" *Ziegler v. Connecticut*

United States District Court

For the Northern District of California

*General Life Ins. Co.,* 916 F.2d 548, 550 (9th Cir. 1990).  Thus, the Court "must first isolate and define the underlying violation upon which plaintiff's claim is founded." *Id.* at 550-551 (quoting *Meagher v. International Ass'n of Machinists and Aerospace Workers Pension Plan,* 856 F.2d 1418, 1422 (9th Cir.1988), *cert. denied,* 490 U.S. 1039 (1989)).  The second consideration is when the complainant had "actual knowledge of the alleged breach or violation." *Ziegler,* 916 F.2d at 552.  Actual knowledge of the breach or violation under Section 413(2) "is triggered by . . .  knowledge of the transaction that constituted the alleged violation." *Blanton v. Anzalone,* 760 F.2d 989, 992 (9th Cir. 1985).  Actual knowledge does not require knowledge of the legal consequences of the transaction. *Id.*

Nonetheless, Section 413 also carves out an exception to the statute of limitations.  It provides that "in the case of fraud or concealment, each action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.  This exception is, however, narrow.  The Ninth Circuit in *Barker v. American Mobil Power Corp.* found that "the exception applies only when the defendant himself has taken steps to hide his breach of fiduciary duty." 64 F.3d 1397, 1402 (9th Cir. 1995), *as amended* (Nov. 15, 1995).  In this way, Section 413 incorporates the common law doctrine of "fraudulent concealment." *Id.*[5]

*Barker* concluded that "a statute of limitations may be tolled only if the plaintiff establishes affirmative conduct upon the part of *the defendant* which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Barker,* 64 F.3d at 1402 (citations omitted) (emphasis in original).

Consequently, in the ERISA context, courts have concluded that affirmative steps of concealment, as opposed to mere failure to disclose, is necessary to toll the running of the statute of limitations.  "The 'fraud or concealment' exception . . . does not apply simply because an ERISA fiduciary fails to disclose material information." *DeFazio v. Hollister, Inc.,* 636 F. Supp. 2d 1045,

---

[5] The Second Circuit and the Tenth Circuit have departed from the Ninth Circuit, Third Circuit, First Circuit, D.C. Circuit, Seventh Circuit, and Eighth Circuit.  The Second Circuit has declined to "follow our sister circuits in fusing the phrase "fraud or concealment" into the single term 'fraudulent concealment.'" *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 188-89 (2d Cir. 2001); *see also Fulghum v. Embarq Corp.,* No. 13-3230, --- F.3d ----, 2015 WL 759169, at *13 (10th Cir. Feb. 24, 2015).

1057-58 (E.D. Cal. 2009); *Kanawi v. Bechtel Corp.,* 590 F. Supp. 2d 1213, 1226 (N.D. Cal. 2008) (concluding lack of disclosure of self-interest "does not rise to the level of active concealment"); *see also Larson v. Northrop Corp.,* 21 F.3d 1164, 1173-74 (D.C. Cir. 1994).  Evidence of the affirmative conduct of active concealment is necessary.  *See Tibble v. Edison Int'l,* 639 F. Supp. 2d 1074, 1086 (C.D. Cal. 2009) *aff'd,* 711 F.3d 1061 (9th Cir. 2013) and *aff'd,* 729 F.3d 1110 (9th Cir. 2013). Showing such concealment requires pleading that the Defendant "made knowingly false misrepresentations with the intent to defraud" or undertook "affirmative steps" to conceal any alleged fiduciary breaches.  *Barker,* 64 F.3d at 1401; *Kanawi,* 590 F. Supp. 2d at 1226.

Conversely, offering proof of the underlying breach of fiduciary duty is not enough.  *Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1401 (9th Cir. 1995), *as amended* (Nov. 15, 1995) (determining that facts that may suffice to allege a breach of fiduciary duty do not establish the "fraud or concealment" exception to the statute of limitations); *McKeown v. Pac. Bell Directory,* No. C-97-0427 MHP, 1999 WL 111886 at *5 (N.D. Cal. Feb. 26, 1999) ("At most, this is evidence of the underlying breach of misinformation itself, rather than intentional steps to hide the breach.").

As to Cotterman,[6] the first step of this Court's analysis, identifying when the alleged "breach or violation" occurred, shows that Yamauchi has not pled a timely ERISA claim.  Yamauchi has alleged no last action of the alleged breach or violation by Cotterman that took place within six years of the complaint.  Nor has Yamauchi alleged any "latest date of cure" as to any alleged omission within six years of the complaint.  Instead, Yamauchi's allegations relate to the period in 1998 when the plan was terminated without any assignment of the participation interest in the mortgage payments to Yamauchi and Lee as Plan beneficiaries.  *See* Amended Complaint ¶ 4. Yamauchi alleges that "Cotterman needed to insure that the Plan's investment [was] handled in a

---

[6] Cotterman is the only Defendant alleged to be a fiduciary under ERISA.  Yamauchi alleges that Cotterman had duties with respect to the Plan and its beneficiaries under 29 U.S.C. § 1104 (Amended Complaint ¶ 11).  By contrast, Yamauchi alleges that "[e]ach Bank was a fiduciary to the investing mortgagee" (*id.* ¶ 15) and the Banks were "fiduciaries under California state banking laws" (*id.* ¶ 16).  Even if the Court determined that Yamauchi had adequately pled that the Bank serviced loans for the benefit of the Plan as "investing mortgagee," without a further showing of discretionary duties, such status does not automatically make a Bank an ERISA fiduciary.  *See McMorgan & Co. v. First California Mortgage Co.,* 916 F. Supp. 966, 973 (N.D. Cal. 1995) (holding duties of loan servicer were ministerial and therefore loan servicer was not an ERISA fiduciary).

1    proper manner *when the Plan was terminated."* Amended Complaint ¶ 11 (emphasis added).

2    Yamauchi alleges that Cotterman did not carry out his fiduciary duties "on Plan termination." *Id.* ¶

3    12. He alleges that Cotterman "failed to direct the Bank[s] where to pay the funds collected from

4    the loans." *Id.* ¶ 5. This failure was alleged to take place in 1998. *Id.* ¶ 4. Once the Plan terminated

5    in 1998, it is unclear what continuing fiduciary duties Cotterman could have owed the Plan

6    beneficiaries as a Plan fiduciary.[7] In other words, Yamauchi has not alleged any theory of

7    continuing violation as to Cotterman. No allegations in the Amended Complaint suggest a theory of

8    continuing fiduciary duty under ERISA, and Yamauchi acknowledges in his opposition, "[n]ow

9    there is no ERISA because there is no Plan." Docket No. 78 at 10.

10       Absent tolling by active concealment, Yamauchi's claim against Cotterman is time-barred.

11   Yamauchi also fails to plead sufficiently such concealment. To begin, Yamauchi does not satisfy

12   Rule 9's pleading standards. As the Court advised Yamauchi at the hearing on Cotterman and

13   Citigroup's first motions to dismiss, Yamauchi must meet the heightened pleading standard of Rule

14   9 with respect to any allegations sounding in fraud. This includes allegations of fraudulent

15   concealment. To invoke the doctrine of fraudulent concealment, Yamauchi "must plead with

16   particularity the facts giving rise to the fraudulent concealment claim and must establish that [he]

17   used due diligence in trying to uncover the facts [giving rise to his claims]." *Volk v. D.A. Davidson*

18   *& Co.,* 816 F.2d 1406, 1415-16 (9th Cir. 1987).

19       In terms of "affirmative steps," Yamauchi alleges that Cotterman misrepresented that he

20   would turn the long-term Plan assets over to him. *See* Amended Complaint ¶¶ 18; 20. While this

21   allegation may support Yamauchi's theory of Cotterman's breach of fiduciary duties under 29

22   U.S.C. § 1104, this allegation does not suffice to plead any "knowingly false misrepresentations

23   with the *intent to defraud*." *Barker,* 64 F.3d at 1401 (emphasis added); *Kanawi,* 590 F. Supp. 2d at

24   1226.

---

26   [7] Yamauchi has not sufficiently alleged that after the Plan terminated Cotterman was under

27   any continuing duty to monitor or continuing duty as to Plan asset allocation. This is not a case
     where each alleged wrongful payment to the Banks reflected a new failure by Cotterman.

28   Cotterman's failure, if any, was in 1998 when Cotterman did not successfully transfer the interest or
     direct the Banks to make payments for Yamauchi's benefit.

**United States District Court**
For the Northern District of California

1    Yamauchi's allegations of affirmative steps of concealment are also deficient.  Yamauchi

2   alleges that Cotterman "did nothing except conceal the fact … that Cotterman had not assigned the

3   loans to Plaintiff."  Amended Complaint ¶¶ 20-21, 30-34.  This allegation is conclusory and does not

4   satisfy Rule 8 or Rule 9.  *Iqbal,* 556 U.S. at 678 (holding Rule 8 "does not require detailed factual

5   allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

6   accusation" (citation omitted)); *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003)

7   (holding under Rule 9(b) that "[a]verments of fraud must be accompanied by 'the who, what, when,

8   where, and how' of the misconduct charged.").  Yamauchi fails to plead the required showing that

9   Cotterman undertook "affirmative steps" to conceal the alleged fiduciary breach.  *Id.; see also*

10   *Barker,* 64 F.3d at 1402 ("Because the plaintiffs in this action failed to show that [Defendants]

11   themselves committed specific acts of fraud or concealment, the plaintiffs may not invoke the 'fraud

12   or concealment' exception to ERISA's statute of limitations."); *Kanawi,* 590 F. Supp. 2d at 1226.

13    This case is factually analogous to *Laskin v. Siegel* in the Seventh Circuit, in which an

14   ERISA plan beneficiary alleged fiduciary breach arising from termination of the plan without notice

15   and without payment of her vested assets.  *Id.* 728 F.3d 731, 733 (7th Cir. 2013), *reh'g denied* (Oct.

16   3, 2013), *cert. denied,* 134 S. Ct. 1879 (2014).  The plan terminated three years after the beneficiary

17   received an account statement showing her account balance was $12,602.86.  *Id.*  When the

18   beneficiary inquired into the account years later, she was informed that the plan had been

19   terminated, that its funds were disbursed in whole, and that she had received no payment because

20   she could not be located.  *Id.*  In *Laskin,* the Seventh Circuit affirmed summary judgment for the

21   defendants, finding that the beneficiary's claims were time-barred under Section 413.  *Id.* at 735.

22   The Seventh Circuit found that the last act or omission under 29 U.S.C. § 1113(1) occurred at plan

23   termination, seventeen years before the beneficiary learned that her account no longer existed and

24   nineteen years before she filed suit.  *Id.*  As a result, the limitations period had expired.  *Id.*  The

25   court also concluded that allegations that the fiduciary accurately informed the beneficiary that the

26   eligibility age increased from 55 to 65 (arguably delaying her inquiry), that the fiduciary failed to

27   notify the beneficiary of plan dissolution, and that the fiduciary failed to send the required Summary

28

**United States District Court**

For the Northern District of California

1   Plan Descriptions did not show concealment.[8]  *Id.*  The court similarly concluded that there was no

2   evidence of fraud and affirmed judgment for the defendants.  *Id.*

3        In this case, Yamauchi has an even weaker argument regarding concealment.  Yamauchi, in

4   his opposition, focuses on his notice of the injury from the breach.  Relying on judicially noticeable

5   documents, Yamauchi argues in his opposition brief that in July of 1998 he was told by Cotterman

6   that the "mortgage participation investment consists of participation interests in three mortgages

7   which are scheduled to begin to begin paying off thirteen years from now, however, two of the

8   mortgages cannot be located."  In this document, Cotterman proceeds to say that the "third mortgage

9   has been located and is estimated, in thirteen years, to begin paying monthly payments . . . totaling

10  about $92,500 over nine years."[9]  Docket No. 71-1.  Yamauchi argues that he reasonably waited

11  thirteen years until 2011 and investigated the facts underlying his claim when he did not begin to

12  receive payments.  Yamauchi also cites to a declaration that he submitted in connection with his

13

14        [8] The Seventh Circuit does not limit the fraud or concealment exception to affirmative acts of

15  concealment.  In the Seventh Circuit, "so-called self-concealing acts" qualify as concealment.
    *Martin v. Consultants & Administrators, Inc.,* 966 F.2d 1078, 1095 (7th Cir. 1992)

16
         [9] Defendant Cotterman requests judicial notice of his declaration and the exhibits thereto,

17  which were filed in 1998 in the matter of *USA v. James Yiu Lee and Jonathan Yamauchi.*  Docket
    No. 71-1.  BANA requests judicial notice of the same document.  Yamauchi does not oppose

18  noticing the Cotterman Declaration or its exhibits.  Indeed, Yamauchi cites facts from the document
    in his opposition.  Moreover, Yamauchi also requests judicial notice of one of the attached letters to

19  the Cotterman declaration.  The Court therefore **GRANTS** Cotterman, BANA, and Yamauchi's
    requests for judicial notice of Docket No. 71-1, Docket 64-1, Ex. E, and Docket No. 78-1.  The

20  various requests for judicial notice show that the declaration and attached documents were part of
    the public record of Yamauchi's criminal trial.  The source of the documents, the Court case file, is

21  one whose accuracy cannot be reasonably questioned.  The Court notices the fact of the documents,
    and the existence of the statements therein, but does not notice the statements themselves as true.

22  *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).  In this case, the existence of the
    documents sheds light on the critical issues of concealment and notice.

23
         Citigroup objects to *Yamauchi's* request for judicial notice, because it claims that the

24  accuracy of the Cotterman letter cannot be readily determined for the following reasons: Yamauchi
    is not the author, authenticity is necessarily a problem for a letter that is over 16 years old, and

25  Yamauchi is a convicted criminal.  Docket No. 82.  The Court overrules Citigroup's objections in
    light of Defendant Cotterman's request for judicial notice of the same letter.  See Docket No. 71-1 at

26  pp. 12-15 of 41.  Cotterman (and BANA's) request for judicial notice of the same document shows
    that the letter was filed as part of the public record of Yamauchi's criminal trial.  Indeed, the letter

27  itself shows that it was carbon copied to Judge Wilken.  Authenticity concerns are therefore
    diminished, as the document can be verified as authentic in the Court's own docket records.

28  Cotterman wrote the letter and seeks judicial notice of it, addressing Citigroup's concern regarding
    Yamauchi not being the author of the letter.  Finally, Cotterman is not a convicted criminal.

United States District Court

For the Northern District of California

1    prior motion to dismiss.  At that time, he claimed that the Paysinger borrower's contact with him

2    triggered his inquiry into the status of the loan payments in 2013.

3            As an initial matter, argument in opposition cannot cure a defect in the pleading.  "In

4    determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to

5    a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

6    dismiss."  *Broam,* 320 F.3d at 1026 n.2 (quoting *Schneider v. Cal. Dep't. of Corr.,* 151 F.3d 1194,

7    1197 n.1 (9th Cir.1998) (emphasis in original)).

8            In any event, allowing Yamauchi to amend to include these proffered facts in his complaint

9    would not make Yamauchi's ERISA claim timely.  ERISA's statute of limitations is keyed to the

10   *earlier of* Section 413(1) or Section 413(2).  In this case, even crediting Yamauchi's argument that

11   he did not have actual knowledge of breach until 2011, Section 413(1) sets the earlier date.  As pled,

12   the last action which constituted a part of the breach or violation was in or around 1998.  Under

13   Section 413(1), a timely claim would have to be brought before 2004 (or 2005 at the latest).  Section

14   413(1) therefore bars Yamauchi's claims against Cotterman as untimely.  *Laskin,* 728 F.3d at 735

15   (holding limitations period expired six years after plan termination).

16           Nor has Yamauchi adequately pled fraud or concealment to extend the ERISA statute of

17   limitations as to Cotterman.  Setting aside Yamauchi's various arguments and allegations raised in

18   opposition, it is clear that, within the four corners of Yamauchi's Amended Complaint, Yamauchi's

19   pleadings do not satisfy Rule 8 and fall far short of Rule 9(b)'s heightened pleading standards.

20   Nothing in Yamauchi's opposition suggests that these pleading defects can be cured.  His Amended

21   Complaint makes clear that Cotterman notified him regarding the anticipated Plan termination.

22   Docket No. 61 ¶ 18.  Similarly, the documents that Yamauchi points to and relies on in his

23   opposition show that in 1998 Cotterman provided written notice to Yamauchi of the Plan's

24   anticipated final distributions before the Plan termination.  *Cf.  Laskin,* 728 F.3d at 735 (declining to

25   find concealment even where plaintiff received no notice of plan termination).  Yamauchi may have

26   expected to receive mortgage payments in 2011, but, like the *Laskin* beneficiary who may have

27   waited to reach eligibility age, this is not evidence of concealment sufficient to toll the limitations

28   period.  *Laskin,* 728 F.3d at 735.  This is particularly true, because, as discussed below, reasonable

United States District Court
For the Northern District of California

diligence should have led Yamauchi to discover his claims in or around 1998.  For these reasons, the Court **GRANTS** Cotterman's motion to dismiss – ERISA preempts common law claims against Cotterman, and ERISA's statute of limitations bars Yamauchi's claims.[10]

### 2.   Common Law Claims

The common law claims alleged by Yamauchi against the Bank Defendants are governed by statutes of limitation that range from two to four years.  Yamauchi's claim of negligent misrepresentation is subject to a two-year limitations period under California law.  *E-Fab, Inc. v. Accountants, Inc. Servs.,* 153 Cal. App. 4th 1308, 1316 (2007) ("[A] cause of action for negligent misrepresentation typically is subject to a two-year limitations period.").  Yamauchi's fraudulent misrepresentation and fraud claims are subject to a three-year statute of limitations.  Cal. Civ. Proc. Code § 338 (d) (three-year statute of limitations for actions for relief on the ground of fraud or mistake).  Similarly, the statute of limitations for breach of fiduciary duty is three years where the gravamen of the claim is fraud; otherwise it is four years under the catchall provision of California's Civil Procedure Code Section 343(a).  *Am. Master Lease LLC v. Idanta Partners, Ltd.,* 225 Cal. App. 4th 1451, 1479 (2014), *as modified* (May 27, 2014).

### a.   Delayed Discovery Rule

Under California law, in general, "in ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action." *Apr. Enterprises, Inc. v. KTTV,* 147 Cal. App. 3d 805, 826 (Ct. App. 1983) (citation omitted).  The negligent misrepresentation and breach of fiduciary duty claims accrue "when the cause of action is complete with all of its elements."  *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797, 806 (2005).

The discovery rule, however, ameliorates the harshness of this rule where it is "manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured." *Apr. Enterprises,* 147 Cal. App. 3d at 826.  To prevent the dismissal of a cause of action brought by a plaintiff who is "blamelessly ignorant" of the existence of his claim, under the discovery rule, a

---

[10] Cotterman has also moved to strike and has raised other pleading challenges.  In light of the Court's conclusion that, as to Cotterman, Yamauchi's non-ERISA claims are preempted and Yamauchi's ERISA claims are untimely, the Court deems Cotterman's other objections to be moot.

**United States District Court**
For the Northern District of California

cause of action accrues "when the plaintiff discovers or should have discovered all facts essential to his cause of action." *Id.* at 826-27.  The test is when the "plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." *Id.*  "[T]he discovery rule applies to causes of action involving the breach of a fiduciary relationship."  *Id.*  The discovery rule also inheres in actions arising from fraud or mistake, which do not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Cal. Civ. Proc. Code § 338(d).

A plaintiff relying on the discovery rule to show delayed accrual of a cause of action bears the burden of "pleading and proving belated discovery."  *Czajkowski v. Haskell & White, LLP,* 208 Cal. App. 4th 166, 174 (2012).  "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal.4th 797, 807 (2005); *see also Kline v. Turner,* 87 Cal. App. 4th 1369, 1374, 105 Cal. Rptr. 2d 699, 702 (2001) (holding that in cases of fraud or mistake the "statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry").

A plaintiff is on inquiry notice when "he or she has reason at least to suspect a factual basis for its elements."  *Id.*  An adequate pleading of delayed discovery requires more than a mere conclusory allegation of diligence; it should set forth pleaded facts that show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Czajkowski,* 208 Cal. App. 4th at 175.  "[O]nce properly pleaded, belated discovery is a question of fact."  *E-Fab,* 153 Cal. App. 4th at 1320.

In this case, Yamauchi does not properly plead delayed discovery – he does not allege in the Amended Complaint the time and manner of the discovery of his cause of action or the inability to have made earlier discovery.  He alleges, in connection with his fraud-related claims, that Cotterman misrepresented that he would take certain actions for Yamauchi and that Cotterman "did nothing except conceal the fact … that Cotterman had not assigned the loans to Plaintiff."  Amended Complaint ¶¶ 20-21, 30-34.  Yamauchi does not, however, allege his diligence or the time and manner of discovery as required.  *Czajkowski,* 208 Cal. App. 4th at 175.

More importantly, the Amended Complaint pleads facts that show that the exercise of

United States District Court

For the Northern District of California

reasonable diligence would have put Yamauchi on inquiry notice of his causes of action more than 10 years ago. Yamauchi alleges that no payments were remitted to MassMutual after Cotterman closed the account at MassMutual in 1998. Amended Complaint ¶ 4. The Partial Purchase Agreement attached to the Complaint provides that "Seller [Echelon] shall not sell, bargain, mortgage or convey its retained interest in the Notes and Deeds of Trust without first obtaining Purchaser's written consent thereto." Amended Complaint, Ex. 4 at 7. As Exhibit 3 to the Amended Complaint shows, when Messrs. Yamauchi and Lee effected a transfer of the retained interest from Echelon to the Plan, they did so in writing. *Id.,* Ex. 3.

According to the allegations of the Amended Complaint, Cotterman did not provide Yamauchi with any writing effecting the transfer of the retained interest from the Plan to Yamauchi. Amended Complaint ¶ 4. Judicially noticeable documents show that Yamauchi was on notice that the Plan was being terminated in 1998. In September of 1998, Yamauchi's attorneys filed a declaration by Cotterman in connection with Yamauchi's sentencing in the criminal action in which Cotterman attests that "I have determined that the Plan assets should be distributed to the participants and that the Plan should be terminated." Docket No. 71-1 at ¶ 3. That declaration attaches, among other things, a memorandum to "All Plan Participants in the Echelon Mortgage Corporation 401(k) Profit Sharing Plan" from John Cotterman as Trustee. In that memorandum, Cotterman writes that as of the end of June, 1998:

> plan assets consisted of individual annuity contracts with MassMutual . . . money market funds with MassMutual . . . and non-liquid, long-term mortgage investments of unknown value. All accounts of the owner participants which were able to be converted to cash have been converted to cash and contributed, by the owner participants at their request, for the [] purpose [of] making all accounts of non-owner participants whole. . . . The mortgage investment consists of participation interests in three mortgages which are scheduled to begin paying off thirteen years from now, however, two of the mortgages cannot be located. The third mortgage has been located and is estimated, in thirteen years, to begin paying monthly payments . . . totaling about $92,500 over nine years. The future value is less than the remaining balances owed to the owner participants . . . [t]herefore any future participation interests in the remaining [three] mortgages will be assigned to the owner participants and they will assume the risk as to whether or not the participation interests in the three mortgages will have any value in the future.

Docket No. 71-1. Cotterman concludes "[o]nce all individual annuities and cash assets have been

United States District Court
For the Northern District of California

1    distributed and the ownership of the mortgage investment has been transferred, the termination of

2    the Plan will be complete and final filings/reports will be made to the Internal Revenue Service and

3    the Department of Labor." *Id.*[11]

4        When Yamauchi received no writing effecting or confirming a transfer of the future

5    participation interests in the three mortgages identified in this memo as Plan assets, Yamauchi was

6    on inquiry notice, if not actual notice, of the alleged breach.  In other words, Yamauchi was on

7    notice in or around 1998.  At or around the time of the termination of the Plan, Yamauchi was a

8    sophisticated businessman; he is alleged to have been the CEO and owner of Echelon Mortgage

9    Corporation.  *Id.* ¶ 1.  He was in the mortgage business.  *Id.*  He had previously effected a transfer of

10   the very same mortgage participation interest in writing.  Amended Complaint, Ex. 3.  He received

11   multiple notices that the Plan was to be terminated.  While Yamauchi may have expected to receive

12   the cash benefits of the transfer years later, he was on inquiry notice of his claims at or around the

13   time he failed to receive any documents indicating that the transfer had been effected.  The existence

14   of inquiry notice was especially strong given the fact that Cotterman allegedly told Yamauchi he

15   planned to terminate the plan and turn over the remaining "illiquid" assets over to Yamauchi.

16   Docket No. 61 at ¶¶ 18-19.  Indeed, Yamauchi alleges that, even though Cotterman never put the

17   Banks on notice of the planned transfer of the interest, the Banks were negligent in not investigating

18   who should receive the funds.  Amended Complaint, ¶¶ 4, 24.  By the same token, Yamauchi

19   himself likewise failed to exercise diligence.  As alleged, the facts are susceptible of only one

20   plausible inference:  that Yamauchi's common law causes of action accrued in or around 1998.[12]

21         b.    Continuing Wrong

22       While Yamauchi does not directly raise any cases discussing continuing wrong in his

23   opposition, Citigroup raises the issue, and the allegations of the Amended Complaint arguably point

24   _____

25       [11] The Court takes judicial notice of the existence of these documents and their
communication to Yamauchi, which is not disputed; the Court need not take judicial notice of the

26   accuracy of the contents because the only purpose of the judicial notice is establishing Yamauchi's
state of mind and knowledge.

27       [12] *Cf. Kline,* 87 Cal. App. 4th at 1374 (holding summary judgment proper where

28   uncontradicted facts are susceptible of only one legitimate inference and finding as a matter of law
that plaintiff was on inquiry notice of alleged fraud)

1    to a theory of continuing wrong as to the Banks.  The Court addresses that theory for the sake of

2    completeness.  Citigroup contends that "California courts have not applied the 'continuing violation'

3    doctrine to common law torts."  That contention is incorrect.  The California Supreme Court,

4    applying common law accrual principles, has recognized there "are two main branches [of

5    continuing-wrong accrual], the continuing violation doctrine and the theory of continuous accrual."

6    *Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal. 4th 1185, 1197 (2013) (discussing continuing-wrong

7    principles with respect to UCL claims governed by common law accrual rules).

8         Nevertheless, the Court agrees that the Amended Complaint does not adequately plead a

9    continuing violation theory.  This is not a case where the "wrongful course of conduct became

10   apparent only through the accumulation of a series of harms."  *Aryeh,* 55 Cal. 4th at 1198 (holding

11   continuing violation not applicable in case alleging recurring wrongful charges pursuant to a lease

12   that began outside the limitations period).  Consequently, Yamauchi has failed to allege a viable

13   claim of continuing violation.  *Id.*

14        Nor can Yamauchi's claims be saved by the continuous accrual doctrine.  California

15   recognizes continuous accrual where there is a continuing or recurring obligation.  The continuous

16   accrual doctrine responds to "the inequities that would arise if the expiration of the limitations

17   period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit

18   for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would

19   thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance."  *Aryeh,*

20   55 Cal. 4th at 1198.  In situations where "there is a continuing or recurring obligation" the cause of

21   action is deemed to accrue each time there is a new breach, providing all the elements of a claim.

22   *Id.* at 1199.  Under continuous accrual, the plaintiff is limited as to the period for which he can seek

23   damages.  In contrast to "the continuing violation doctrine, which renders an entire course of

24   conduct actionable, the theory of continuous accrual supports recovery only for damages arising

25   from those breaches falling within the limitations period."  *Id.*

26        In the Amended Complaint, Yamauchi alleges that "[b]y keeping the funds, the [B]anks have

27   breached their fiduciary duties to plaintiff and these breaches are separate causes of action."

28   Amended Complaint ¶ 16.  He continues to note that each of the Banks' purported fiduciary

**United States District Court**
For the Northern District of California

19

**United States District Court**

For the Northern District of California

1  breaches "continues as each payment is made and booked to each account of each bank." *Id.*

2  Separate, recurring breaches of fiduciary duty may provide a basis for the application of continuous

3  accrual, where each violation triggers its own statute of limitations. *Aryeh,* 55 Cal. 4th at 1199.

4       Here, however, the Amended Complaint does not point to any violations by the Banks within

5  the limitations period.  Plaintiff's Amended Complaint attaches correspondence from 1998 from

6  *before* Echelon's interest in the Partial Purchase Agreement was assigned to the Plan.  Amended

7  Complaint, Ex. 7 (dated February 12, 1998); *see also* Ex. 3 (dated February 18, 1998).  This letter

8  shows that the Paysinger loan, one of the loans that was subject to the Partial Purchase Agreement,

9  was sold by Fleet to Associates Private Mortgage at some point in 1996.  The letter reflects that the

10  last payment to Fleet was in September 1996, almost two years before Echelon's participation

11  interest was allegedly transferred to the Plan. *Id.*

12       In other words, under the pled facts, Fleet ceased receiving funds from the Paysinger loan

13  well before Echelon's interest was transferred to the Plan and well before Cotterman was allegedly

14  under an obligation to transfer the Plan's interest to Yamauchi, a fact of which Yamauchi was on

15  notice in 1998.  Moreover, Yamauchi's claims against BANA stem from his belief that BANA

16  obtained the Plan's funds after it merged with Fleet Bank.  According to a Form 8-K filed with the

17  Securities and Exchange Commission, FleetBoston Financial Corporation merged with and into

18  Bank of America Corporation, the publicly-traded holding company registered with the SEC,

19  effective April 1, 2004.[13]  This merger took place more than seven years after the Paysinger loan was

20  sold to Associates Private Mortgage and around 10 years before Yamauchi brought this action.

21  Even applying a theory of continuous accrual, there is no plausible showing that BANA received

22  funds from the Paysinger loan that were owed to the Plan or that should have been transferred to

23

24

25       [13] The Court **GRANTS** BANA's unopposed request for judicial notice of the Form 8-K.

26  Docket No. 64-1.  The Court may take judicial notice of facts not reasonably subject to dispute and capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably

27  be questioned.  Fed. R. Evid. 201(b).  A filing with the SEC is the type of public record that comes from a source whose accuracy cannot reasonably be questioned. *See In re Copper Mountain Sec.*

28  *Litig.,* 311 F. Supp. 2d 857, 863 (N.D. Cal. 2004) (holding judicial notice of SEC filings "is proper").

United States District Court

For the Northern District of California

Yamauchi within the limitations period.[14]

Yamauchi's claims against Citigroup are similarly deficient.[15]  Yamauchi has sued Citigroup, because Citigroup allegedly purchased Associates Private Mortgages West ("APMW").  Amended Complaint ¶ 5.  As discussed above, the Paysinger note was sold to Associates Private Mortgage in 1996, with servicing transferred to APMW in 1997.  Amended Complaint, Ex. 7.  The Amended Complaint also alleges that the entity APMW sold the Paysinger loan to Grand Bank.  Amended Complaint ¶ 5.  Yamauchi has attached an exhibit showing communications in 2013 with Grand Bank regarding the Paysinger loan.  These communications suggest that Grand Bank was servicing the Paysinger loan.  Again, the pled facts do not provide any plausible basis for concluding that Citigroup obtained any payments on the Paysinger loan (or any other loan) within the limitations period.

---

[14] Although "Schedule A" to the Partial Purchase Agreement lists 9 mortgage notes other than the Paysinger loan that were assigned to Fleet in 1991, the allegations show that as of 1998, not all of those loans were to be transferred to the Plan or to Yamauchi.  Exhibit Two to the Amended Complaint states that three of those nine loans had been paid off.  That letter states that the Paysinger loan had been located and that Yamauchi was working with Fleet Finance to determine whether or not any mortgage participation interest remained with respect to two other mortgages.  Amended Complaint, Ex. 2.  Consistent with this letter, later correspondence, which Yamauchi, Cotterman, and BANA request be judicially noticed, represents that the "mortgage investment consists of participation interests in three mortgages."  Docket No. 71-1.  That letter notified Yamauchi that one mortgage, which has approximately the same value as that estimated for the Paysinger loan in Exhibit 2, had been located while the other two mortgages "cannot be located."  *Id.*  Consequently, Yamauchi was to "assume the risk as to whether or not the participation interests in the three mortgages will have any value in the future."  *Id.*  As discussed in note 6, *supra,* Yamauchi does not take issue with the statements in this document, requests judicial notice of this document, and cites other statements from this document in his own opposition.  The factual content contained in the exhibits and noticed documents provide no plausible connection between BANA and any loan interest payments in which Yamauchi claims an interest.  In particular, nothing connects BANA with the other two loans, which Yamauchi was told could not be located in 1998.  Notably, Exhibit 2 to the Amended Complaint reflects that, back in 1998, Yamauchi worked with Fleet Finance to locate records concerning the loans subject to the participation interest.  Amended Complaint, Ex. 2.  The lack of any factual allegations tying particular loans to BANA or Citigroup is particularly troubling in light of Yamauchi's prior work to trace the loans.

[15] Yamauchi has submitted a supplemental request for judicial notice, which is opposed by BANA and Citigroup.  Docket No. 93.  The documents attached to Yamauchi's request come from Grand Bank's files, and were not publicly available.  *Id.,* at 1.  These documents are therefore not noticeable, as the facts therein are subject to dispute and are not capable of ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See Intri-Plex Technologies, Inc. v. Crest Grp., Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001); Fed. R. Evid. 201(b).  Nevertheless, as discussed below, the Court will consider these documents with respect to whether leave to amend is futile.

United States District Court

For the Northern District of California

1    As a result, on the face of the Amended Complaint, Yamauchi has not alleged any timely

2    breaches of fiduciary duty against the Banks, even applying a theory of continuous accrual.

3    Moreover, Yamauchi offers no allegation of any continuous wrongful conduct with respect to his

4    negligent misrepresentation, fraudulent misrepresentation, or fraud claims.  The pled facts lead to

5    the inescapable conclusion that Yamauchi had inquiry notice of his claims over ten years before he

6    filed suit.  Yamauchi's claims against the Banks for breach of fiduciary duty, negligent

7    misrepresentation, fraudulent misrepresentation, and fraud are therefore all time-barred.

8        3.    Declaratory Judgment Claim

9    The Declaratory Judgment Act places a "remedial arrow in the district court's quiver."

10   *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995).  Declaratory judgment actions, however, are

11   "subject to a statute of limitations generally applicable to civil claims."  *Zuill v. Shanahan,* 80 F.3d

12   1366, 1369-70 (9th Cir. 1996), *as amended* (June 14, 1996); *see also Levald, Inc. v. City of Palm*

13   *Desert*, 998 F.2d 680, 688-89 (9th Cir. 1993); *Howard Jarvis Taxpayers Ass'n v. City of La Habra,*

14   25 Cal. 4th at 821(2001), *as modified* (July 18, 2001).

15   Consequently, if "a claim for declaratory relief could have been resolved through another

16   form of action which has a specific limitations period, the specific period of time will govern."

17   *Levald,* 998 F.2d at 688 (quotations omitted).  As applied here, "styling an action as one for

18   declaratory relief rather than for damages" cannot save Yamauchi's claims from the specific

19   applicable statutes of limitation.  *Id.*  The declaratory judgment claim faces the same time bar as

20   Yamauchi's other claims.

21   D.    Adequacy of Pleading

22   In addition to the failure to plead timely claims, Yamauchi's pleading has numerous other

23   defects.

24       1.    Breach of Fiduciary Duty

25   The elements of breach of fiduciary duty are the existence of a fiduciary relationship, its

26   breach, and damage proximately caused by that breach.  *Pierce v. Lyman,* 1 Cal. App. 4th 1093

27   (1991).  There must be an adequate showing of each of these elements in order to plead a cause of

28

United States District Court
For the Northern District of California

action for breach of fiduciary duty. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal. App. 4th 445 (1998).

Yamauchi has not sufficiently alleged that a fiduciary relationship existed between the Banks and him. The Amended Complaint, as presently pled, alleges that the Banks were servicing the mortgages and had a fiduciary relationship "with the owner of the Promissory Notes." Amended Complaint ¶ 4. In this case, the Partial Purchase Agreement assigned the Promissory Notes and Deeds of Trust to Fleet Finance for the life of the loan. Amended Complaint, Ex. 4, § 2. At best, Yamauchi had a partial interest in the monthly payments on the notes. There are no allegations that show that Yamauchi was ever the owner of the Promissory Notes. Indeed, the allegations show the contrary. Yamauchi specifically alleges that Cotterman never transferred the participation interest to Yamauchi in the first place. Amended Complaint ¶ 4.

Yamauchi also refers in the Amended Complaint to a Housing and Urban Development handbook and California Bankers Association Compliance Bulletin as the basis for his allegations of duty and breach. Neither of these documents provides the necessary factual allegation that Yamauchi was in a fiduciary relationship with the Banks. The HUD webpage to which Plaintiff refers is an "Insured Multifamily Mortgagee Servicing and Field Office Handbook" issued in 1996, and it outlines various servicer functions. *See* http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4350.4/43504c1HSGH.pdf; Amended Complaint ¶ 15. The handbook does not support a finding of any fiduciary relationship between a servicer and Yamauchi.[16] The Compliance Bulletin on which Plaintiff relies actually cuts against his claim. It refers to the case *Brown v. Wells Fargo Bank* and concludes that "[g]enerally, bank-customer relationships are governed by contract," but where "[a] bank . . . provides a high degree of

---

[16] Indeed, the only potentially relevant detail that appears from a review of the cited handbook suggests that Yamauchi as an individual may not have been eligible to hold a participation interest in the mortgages if the mortgages were HUD-insured. The handbook provides: "A mortgagee that holds a partial interest in a HUD-insured loan [] is either an approved mortgagee or a corporation, trust, or organization that certifies to the principal mortgagee that it has assets of $100,000 or more and that it has lawful authority to acquire a partial interest in an insured mortgage."

**United States District Court**
For the Northern District of California

personalized services to a vulnerable customer [it] assumes a fiduciary duty to that customer." *See* CBA Regulatory Compliance Bulletin.[17]

*Brown* shows that fiduciary duties are imposed between a Bank and its customer in very different cases from the one at bar. *Brown* concerned the enforcement of an arbitration agreement between a bank and its customer. *Brown* acknowledged that "[b]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Brown v. Wells Fargo Bank, NA,* 168 Cal. App. 4th 938, 960 (2008). Such fiduciary obligations may arise as a matter of law where "one party's vulnerability," *e.g.,* "advanced age, youth, lack of education, ill health, and mental weakness," is "so substantial as to give rise to equitable concerns." *Id.* (quotations omitted). As the cited Bulletin summarizes, a fiduciary duty in *Brown* was established where "the defendant bank officer (1) knew Brown had limited vision and experienced declining health; (2) worked biweekly at the Browns' home office; (3) was provided with access to all of the Browns' financial information, and managed their significant financial paperwork; (4) introduced the Browns to an estate attorney and an accountant; (5) gave the Browns investment advice; and (6) urged the Browns to consult with the bank's affiliate and open a securities account." CBA Regulatory Compliance Bulletin.

In this case, no allegations suggest that Yamauchi was in a similarly vulnerable relationship with respect to the Banks. Indeed, there are no allegations that Yamauchi ever interacted with BANA or Citigroup (or their predecessor entities) (a) with respect to the transfer he alleges should have been made from the Plan to him or (b) with respect to any of the payments he alleges he should have received. Yamauchi's argument in his opposition that his conviction for embezzling from the Plan made him a "vulnerable customer" does not point to the equitable concerns contemplated in *Brown.* The kind of circumstances that would lead to the imposition of a fiduciary duty under *Brown* is inapposite here.

---

[17] Available at
http://www.calbankers.com/compliance-bulletin/california-ruling-raises-risk-heightened-legal-duty.

**United States District Court**
For the Northern District of California

Furthermore, aside from the Paysinger loan, Yamauchi does not identify which loans are allegedly serviced by the particular Banks or their predecessor entities. Nor does Yamauchi draw any nexus between the proceeds of a given loan and BANA or Citigroup's acquisition of those proceeds. As Yamauchi acknowledges in his opposition "Jonathan Yamauchi does not know exactly what is going on and who is collecting his money." Docket No. 78 at 5. This is not enough to survive a motion to dismiss. *Iqbal,* 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). The Court concludes that Yamauchi has failed to allege factual content showing the existence of a fiduciary relationship between the Banks and Yamauchi. The Court therefore **GRANTS** the Banks' motions to dismiss Yamauchi's claim for breach of fiduciary duty.

2.      Negligent Misrepresentation and Fraud

In addition to being time-barred, Yamauchi's negligent misrepresentation and fraud claims fail, because he has not identified any misrepresentation by the Banks; for the fraud claims, Yamauchi does not satisfy Rule 9(b).

In California, the elements of negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank Nat. Assn.,* 209 Cal. App. 4th 182, 196 (2012).

Yamauchi argues that the Banks' alleged failure to disburse the funds was a misrepresentation. Amended Complaint ¶¶ 24-25; 36-37, 42; Opp., Docket No. 75 at 12-13. The Banks' alleged failure to pay, standing alone, does not support a claim of negligent misrepresentation. Even assuming that the failure of payment might be deemed an omission, an omission alone cannot form the basis for a claim of negligent misrepresentation. *Bynam v. Brand,* 219 Cal. App. 3d 926, 942 (1990); *Regents of the Univ. of Cal. v. Principal Fin. Group,* 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006) ("California negligent misrepresentation law, however, does not impose liability for negligent omissions; some 'positive assertion' is required."). Because Yamauchi fails to allege any affirmative misrepresentation by the Banks, his negligent

misrepresentation claim fails.  *Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.,* 913 F. Supp.
2d 780, 789 (N.D. Cal. 2012) (citing *Lopez v. Nissan N. Am., Inc.,* 201 Cal. App. 4th 572, 596,
(2011)) (negligent misrepresentation claim requires affirmative representation and cannot be based
on nondisclosures).

In California, "[t]he general elements of a cause of action for fraudulent misrepresentation
are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of
falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage."
*Vogelsang v. Wolpert,* 227 Cal. App. 2d 102, 109 (Ct. App. 1964).  The elements for a claim of
fraud are the same.  *In re Estate of Young,* 160 Cal. App. 4th 62, 79 (2008) (quoting *Lazar v. Super.
Ct.,* 12 Cal. 4th 631, 638 (1996)).

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  On the other hand, "[m]alice,
intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*  As
discussed *supra*, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and
how' of the misconduct charged."  *Vess,* 317 F.3d at 1106.  That is, "[a] plaintiff must set forth more
than the neutral facts necessary to identify the transaction[;] [t]he plaintiff must set forth what is
false or misleading about a statement, and why it is false."  *Id.* (quoting *Decker v. GlenFed, Inc. (In
re GlenFed, Inc. Sec. Litig.),* 42 F.3d 1541, 1548 (9th Cir.1994)).  The purpose of Rule 9(b) is to
give defendants notice of the specific fraudulent conduct against which they must defend.
*Bly–Magee v. California,* 236 F.3d 1014, 1018 (9th Cir.2001).

State law causes of action brought in federal court must comply with these heightened
pleading requirements where applicable.  *Vess,* 317 F.3d at 1103.  This includes allegations of
fraudulent concealment to toll the statute of limitations of a claim under state law.  *389 Orange St.
Partners v. Arnold,* 179 F.3d 656, 662 (9th Cir. 1999).

Here, Yamauchi fails to satisfy Rule 9(b) in multiple respects.  "Rule 9(b) does not allow a
complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their
allegations when suing more than one defendant and inform each defendant separately of the
allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP,* 476 F.3d 756,

1  764-65 (9th Cir. 2007) (quotations omitted).  "[A] plaintiff must, at a minimum, 'identify the role of

2  each defendant in the alleged fraudulent scheme.'"  *Id.* at 765 (quoting *Moore v. Kayport Package*

3  *Express, Inc.,* 885 F.2d 531, 541 (9th Cir. 1989)).  Yamauchi makes no specific allegations as

4  against each particular Bank Defendant.  The Amended Complaint lumps the Banks together for the

5  fraud claims, as each allegation is averred as to "The Banks."  This is improper under Rule 9(b).

6  *Swartz,* 476 F.3d at 764-65.

7       Similarly, Yamauchi has failed to set forth sufficient facts that the Banks concealed any

8  information with intent to defraud.  Yamauchi contends that alleging that the Banks kept the

9  contested funds shows intent to defraud.  Docket No. 75 at 13 ("If BANA keeps Plaintiffs money

10 they are certainly violating their fiduciary duties and defrauding the Plaintiff"); Docket No. 76 at 13

11 ("If CITI wanted to follow banking laws, they would disgorge the funds.").  Such an allegation in

12 itself does not state a fraud claim.  Mere failure to pay without more does not plausibly show any

13 intent to defraud or induce reliance – a necessary element of fraud.  Indeed, Yamauchi's contentions

14 cut *against* a finding of intent to defraud, because Yamauchi also alleges that Cotterman "failed to

15 direct the Bank[s] where to pay the funds upon the Plan's termination." Amended Complaint ¶ 5.

16 And to the extent that Yamauchi's fraud claims are actually all claims for constructive fraud, they

17 fail for lack of showing any fiduciary or confidential relationship with the Banks, as discussed

18 herein.  *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,* 634 F. Supp. 2d 1009, 1021 (N.D.

19 Cal. 2007).  The Court **GRANTS** the Banks' motions to dismiss Yamauchi's claims for negligent

20 misrepresentation, fraudulent misrepresentation, and fraud.

21 E.     Leave to Amend

22       Under Rule 15, a court should "freely" give leave to amend when justice so requires.  Fed. R.

23 C. P. 15(a)(2).  Dismissal without leave to amend is within the discretion of the trial court, and is

24 appropriate where a court finds evidence of "undue delay, bad faith, dilatory motive…repeated

25 failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

26 party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman v. Davis,* 371

27 U.S. 178, 182 (1962); *Sonoma County Ass'n of Retired Employees v. Sonoma County,* 708 F.3d

28 1109, 1117 (9th Cir. 2013).  The Court's "discretion to deny leave to amend is particularly broad

United States District Court

For the Northern District of California

1 where plaintiff has previously amended the complaint." *City of Los Angeles v. San Pedro Boat*

2 *Works,* 635 F.3d 440, 454 (9th Cir. 2011).

3      In this case, in ruling on the prior motions to dismiss, the Court found Yamauchi's action to

4 be untimely.  At that time, the Court specifically advised Yamauchi that he would need to satisfy

5 Rule 9 as to any averments of fraud against the Defendants, that he would need to show affirmative

6 concealment to plead the exception to the ERISA statute of limitations, and that he would need to

7 identify a basis for liability against the Banks.  Yamauchi has failed to cure those specific, identified

8 deficiencies.

9      Following the hearing on the pending motions to dismiss, Yamauchi proffered additional

10 facts in an effort to show that he can allege timely claims.  Docket No. 93.  While it would be

11 inappropriate to consider facts not contained in the Amended Complaint as to dismissal, the Court

12 will entertain these facts in assessing whether further leave to amend should be given.  *Broam,* 320

13 F.3d at 1026 n.2.

14      Yamauchi argues that documents he received from Grand Bank show that Citigroup received

15 payments from the Paysinger loan from September of 1996 to December 7, 2001.  Docket No. 93 at

16 2.  In other words, Citigroup is alleged to have received the contested loan proceeds over 12 years

17 before Yamauchi filed suit, *i.e.,* outside of the limitations period.  Yamauchi's newly proffered facts

18 therefore bolster the Court's conclusion that Yamauchi's claims cannot be saved even by application

19 of the continuous accrual theory.  Grand Bank, which is no longer in the case, appears to have had

20 "[a]ll right, title and interest" in the Paysinger note since approximately 2002.  Docket No. 93-1, Ex.

21 4.  These newly proffered facts show that no alleged breaches of fiduciary duty by Citigroup or

22 BANA took place within four years of the commencement of this lawsuit with respect to the

23 Paysinger loan, the only loan that appears to have been located in 1998.

24      Yamauchi also argues that, contrary to his allegation in the Amended Complaint, the Grand

25 Bank file for the Paysinger loan lacked "any reference to the 16% which should go to the pension or

26 any information about the assignment of the note . . . to the Plaintiff."  *Compare* Docket No. 93 at 2;

27 *with* Amended Complaint ¶ 5.  Yamauchi therefore concludes that "[w]ithout that information, there

28 is no way that Grand Bank would know that it was to pay the funds to MassMutual for the benefit of

the pension plan." *Id.*  This concession further undermines Yamauchi's entire theory of liability as to the Banks.  The Banks cannot have breached fiduciary duty, committed negligent misrepresentation, or committed fraud when nothing in the loan file creates any relationship with or responsibilities to Yamauchi (or even the Plan).  As Yamauchi concedes, without such information, the Banks would have no way of knowing that money was due to the Plan or to Yamauchi.  As to Cotterman, this allegation does not overcome ERISA's statute of limitations.

In light of the foregoing, the Court **DENIES** leave to amend.  Yamauchi has had an ample opportunity to address the deficiencies upon which the dismissal herein is based.  Moreover, the Court has generously taken into account "facts" proffered by Yamauchi both before and after the hearing – facts not contained in the Amended Complaint.  Yamauchi has failed to cure deficiencies by amendments previously allowed and further amendment appears futile.

### III.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** the motions to dismiss of Cotterman, BANA, and Citigroup.  The Court dismisses Yamauchi's claims for breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud, and declaratory relief.  Dismissal is with prejudice.  The Clerk of Court is directed to enter judgment and close the file.

This order disposes of Docket Nos. 64, 65, and 70.


IT IS SO ORDERED.


Dated:  March 24, 2015

_____
EDWARD M. CHEN
United States District Judge